**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** | **CIVIL ACTION** |
| **V.** | **NO. 16-8669** |
| **ST. BERNARD PARISH GOVERNMENT** | **SECTION "L" (5)** |

**ORDER & REASONS**

Plaintiff Progressive Waste Solutions of LA, Inc. ("Progressive Waste") has filed a Motion for Preliminary Injunction. R. Doc. 2. Upon receipt of the motion, the Court contacted the parties immediately and scheduled a preliminary injunction hearing for June 20, 2016, at 1:00 p.m. Having reviewed the parties' briefs, the applicable law, and the evidence presented at the preliminary injunction hearing, the Court now issues the present Order & Reasons.

## I. BACKGROUND

This case arises out of a contract dispute. Plaintiff Progressive Waste Solutions of LA, Inc. ("PWS") is a Delaware corporation that specializes in solid waste removal. R. Doc. 1 at 1–2. In early 2006, St. Bernard Parish Government ("St. Bernard") issued a Request for Proposals for Municipal Solid Waste Removal, Curb Side Pick Up. R. Doc. 1 at 2. SDT Waste & Debris Services, LLC, ("SDT") submitted a proposal, and on July 27, 2006, contractually agreed to provide solid waste removal services to St. Bernard. R. Doc. 1 at 2. On February 7, 2007, SDT entered into a Time Contract with St. Bernard regarding both curb side pick up services and dumpster pick up services. The Time Contract was set to commence on January 28, 2008, and terminate on January 27, 2014. R. Doc. 1 at 3. The Time Contract also provided SDT the option to extend the agreement through July 26, 2016. R. Doc. 1 at 3.

In May of 2011, SDT was purchased by IESI LA Corporation, which included the transfer and assignment of the July 27, 2006 Agreement and the February 7, 2007 Time Contract. Despite the purported term of the Time Contract extending to at least January 27, 2014, St. Bernard told IESI that St. Bernard intended to terminate the contractual relationship. On December 5, 2011, St. Bernard sought bids for curb side pick up services and dumpster pick up services. R. Doc. 1 at 3–4. On December 8, 2011, IESI filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunction, and Declaratory Judgment in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard. R. Doc. 1 at 4. The state court issued the preliminary injunction on December 14, 2011, and enjoined St. Bernard from requesting proposals for bids for solid waste collection. R. Doc. 1 at 4. One week later, the state court enjoined St. Bernard from entering into any new contract for the services currently being performed by IESI. R. Doc. 1 at 4.

IESI changed its name to Progressive Waste Solutions of LA, Inc. ("PWS") on January 12, 2012. In May of 2013, St. Bernard once again issued Requests for Proposals inviting vendors to submit proposals for the waste collection services provided by PWS. R. Doc. 1 at 4. In response, PWS filed a Motion for Contempt and a Second Supplemental and Amending Petition for Temporary Restraining Order, Preliminary and Permanent Injunction and Declaratory Judgment in state court on May 20, 2013. R. Doc. 1 at 4–5. The parties resolved their differences before the state court could rule. St. Bernard agreed to extend the Time Contract through December 31, 2020. PWS in turn reduced its rates from $20.00 per household per month to $15.50 per household. R. Doc. 1 at 5. Two months later, PWS and St. Bernard entered into a new Time Contract that extended PWS's provision of solid waste services until December 31, 2020.

On May 19, 2016, St. Bernard wrote to PWS stating that they intended to unilaterally

terminate the solid waste services contract on July 6, 2016. St. Bernard provided two reasons for the termination: (1) the St. Bernard Home Rule Charter prohibits contracts for services not covered by public bid law exceeding three years; and (2) PWS breached the contract by missing residential pickups. R. Docs. 1 at 6, 1-7. PWS brings the instant suit in response, requesting injunctive relief and a declaratory judgment. R. Doc. 1 at 7–9. PWS also seeks damages for breach of contract, detrimental reliance, and deprivation of rights under color of law. R. Doc. 1 at 9–13.

Pelican Waste and Debris, LLC ("Pelican"), filed a Motion for Leave to File Intervention on June 16, 2016. R. Doc. 11. The Court granted the Order, finding that Pelican had an interest in the instant litigation. Specifically, Pelican alleges that it was hired by St. Bernard to replace PWS as the provider of residential waste removal services in St. Bernard Parish, and that its interests will be frustrated and it will be prejudiced if PWS receives its requested relief.

## II. PRESENT MOTION

PWS moves pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction enjoining St. Bernard from terminating the July 5, 2013, Time Contract, and to enjoin St. Bernard from alienating any public funds to Pelican Waste and Debris, LLC ("Pelican") for the performance of services identified in the July 5, 2013, Time Contract. R. Doc. 2 at 1.

### A. PWS's Motion

PWS defines the elements of a preliminary injunction motion as follows: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued; (3) the threatened injury of the injunction if denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. R. Doc. 2-1 at 6.

According to PWS, there is a substantial likelihood that the Court will find St. Bernard has violated Louisiana law and deprived PWS of its contractual rights under the 2013 Time Contract. PWS avers that the contract meets all of the formal requirements to be binding under Louisiana law. R. Doc. 2-1 at 6–7. PWS then denies that St. Bernard's grounds for terminating the 2013 Time Contract are valid. Turning to public bid law, the St. Bernard Charter provides that "Contracts for services not covered by the public bid law shall not be for a period exceeding three (3) years." R. Doc. 2-1 at 8. PWS contends that this language does not invalidate the contract, because the Louisiana Revised Statutes provide that "The governing authority of every parish or municipality shall have the following powers: . . . . To enter into time contracts for the collection and transportation of garbage or trash for a term of up to ten years, and for disposal of garbage or trash for a term of up to twenty-five years." La. R.S. 33:4169(A)(3). PWS asserts that a local law embodied in the Louisiana Revised Statutes amends municipality charters pursuant to La. Const. Art. VI, § 2. R. Doc. 2-1 at 9 (citing *Town of Homer v. Entergy Louisiana, Inc.*, 48,924 (La. Ap. 2 Cir. 4/9/14), 137 So. 3d 811, 814–85). PWS also argues that St. Bernard's contract with Pelican violates Louisiana public bid law. R. Doc. 2-1 at 10–11.

In further support of PWS's argument that PWS will prevail, PWS takes the position that the 2013 Time Contract is a "compromise" as defined in Article 3071 of the Louisiana Civil Code. The 2013 Time Contract was negotiated in the context of a civil suit between PWS and St. Bernard. R. Doc. 2-1 at 12–13. If this is sufficient to render the 2013 Time Contract an Article 3071 compromise, the Time Contract may only be rescinded on grounds of error or fraud, but not where the error is an error of law. La. Civ. Code Art. 3082. PWS characterizes the limited grounds for rescission as a higher burden, and argues that the higher burden supports a finding of a substantial likelihood of success on the merits. R. Doc. 2-1 at 13–14.

In the alternative, PWS argues that it will prevail on its civil rights claim of deprivation of rights under color of law. R. Doc. 2-1 at 14 (citing 42 U.S.C. § 1983). PWS contends that the Fourteenth Amendment entitles PWS to due process prior to the deprivation of their vested, contractual rights. R. Doc. 2-1 at 14–15. According to PWS, St. Bernard intends to terminate the 2013 Time Contract with "**NO** process whatsoever." R. Doc. 2-1 at 14. PWS also considers the termination of the 2013 Time Contract a deprivation of PWS's rights insofar as St. Bernard is selectively enforcing its Charter against PWS. R. Doc. 2-1 at 14–15.

PWS lastly turns to the element of irreparable harm. PWS contends that it need not show irreparable harm, because the Supreme Court has held that the element of irreparable harm (as well as the element of disservice to the public interest) is not required where a statutory violation is at issue, and the "statute by necessary and inescapable inference requires injunctive relief." R. Doc. 2-1 at 15 (citing *United States v. Fed. Deposit Ins. Corp.*, 881 F.2d 207, 210 (5th Cir. 1989) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 (1987)). In support of a finding that Louisiana public bid law requires injunctive relief, PWS contends that "public contracts for non-professional services are particularly susceptible to fraud and abuse and public bidding laws protect the interests of tax-paying citizens by encouraging open competitive bidding for those services." R. Doc. 2-1 at 15–16. PWS cites no case law suggesting that a public contract's susceptibility to fraud and abuse creates an "inescapable inference" of an entitlement to injunctive relief.

In the alternative, PWS takes the position that it will "inevitably suffer unrecoverable financial loss and loss of reputation and good will if the Court does not grant the instant injunction." R. Doc. 2-1 at 16. PWS argues that the Court cannot ensure financial recovery, because "the Court lacks a mechanism to require St. Bernard to pay any monetary judgment entered in favor of PWS, even when one is obtained." R. Doc. 2-1 at 16 (citing *City of New*

*Orleans v. Mun. Admin. Servs., Inc.*, No. 02-0130, 2004 WL 2496202, at *3 (E.D. La. Nov. 5, 2004)). According to PWS, St. Bernard will pay Pelican the funds previously appropriated to PWS for waste collection if the Court does not issue the injunction. PWS takes the position that mandamus is not available to enforce a Judgment against a political subdivision of a State, and St. Bernard can simply choose not to pay any monetary judgment entered against it by this Court.

**B. St. Bernard's Opposition**

St. Bernard opposes the motion. St. Bernard contends that its termination of the contract was not wrongful, because the contract itself was void under Section 5-06 of the St. Bernard Charter. Section 5-06 provides that "[c]ontracts for services not covered by the public bid law shall not be for a period exceeding three (3) years." Because St. Bernard contracted for a seven-year contract with PWS, St. Bernard believes that PWS's contract is null. R. Doc. 14 at 3–5. St. Bernard distinguishes PWS's cited case law and contests PWS's argument that Louisiana law trumps the St. Bernard Charter. R. Doc. 14 at 6–7.

St. Bernard also disputes PWS's assertions that the contract with Pelican was invalidly awarded because the contract with Pelican is an "exclusive franchise" under La. R.S. 33:4169.1. St. Bernard denies that this law is applicable, because Pelican's contract was awarded pursuant to a Request for Proposal and not public bid law. [1] R. Doc. 14 at 7–8.

Lastly, St. Bernard argues that St. Bernard has not opted into state procurement law found in La. R.S. 39:1503, et seq. To the extent that St. Bernard has "opted in," it has done so in regards to Louisiana's 1992 sales tax renewal statute, and not to the sub-parts regarding procurement law for Requests for Proposals.

[1] Counsel for PWS conceded this point at oral argument.

### C. Progressive's Supplemental Memorandum

Progressive filed a supplemental memorandum with the Court on Friday, June 17, 2016. R. Doc. 15. Progressive provides documents suggesting that St. Bernard's stated rationale for terminating the contract, non-compliance with the St. Bernard Charter, is pretextual. R. Doc. 15 at 2–5. Progressive reiterates its argument that termination of the Progressive contract violates positive Louisiana law. R. Doc. 15 at 5–8. Progressive then states that the Court need not find irreparable injury if the case involves the violation of a statute and the "statute by necessary and inescapable inference requires injunctive relief." R. Doc. 15 at 8.

Progressive lastly argues that the Court should not require Progressive to place a bond on behalf of Pelican. Progressive notes that Rule 65(c) of the Federal Rules of Civil Procedure allows for security "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Progressive argues that Pelican is not a "party" for purposes of Rule 65(c), because Pelican is an intervenor, and St. Bernard will be the only party enjoined by the preliminary injunction. Progressive also cites *New Orleans Home for Incurables, Inc. v. Greenstein*, 911 F. Supp. 2d 386, 412–13 (E.D. La.), as evidence that a bond need not be placed where the governmental agency will pay either one provider or another for services regardless of the injunction proceeding.

## III. LAW AND ANALYSIS

### A. The Law of Preliminary Injunctions

"A preliminary injunction is an extraordinary remedy that is issued only when a party does not have an adequate remedy at law." *Dennis Melancon, Inc. v. City of New Orleans*, 889 F. Supp. 2d 808, 815 (E.D. La. 2012). Rule 65 of the Federal Rules of Civil Procedure establishes four criteria for the issuance of a preliminary injunction: (1) irreparable injury; (2) substantial likelihood of success on the merits; (3) a favorable balance of hardships (equity); and

(4) no adverse effect on the public interest. *See Kenneth v. Potter*, 344 Fed. App'x 987, 989 (5th Cir. 2009); *see also Black Fire Fighters Ass'n v. Dallas*, 905 F.2d 63, 65 (5th Cir. 1990). The movant must carry the burden of persuasion "by a clear showing." *See Turner v. Murphy Oil USA, Inc.*, No. 05-4206, 2008 WL 1990813, at *1 (E.D. La. May 2, 2008) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).

**B. The Law of Enforcing Judgments**

Rule 69(A) of the Federal Rules of Civil Procedure provides that:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

In sum, Rule 69(a) grants a court the power to enforce a judgment creditor's efforts to use any method of execution consistent with the practice and procedure of the state in which the district court sits. *See Peacock v. Thomas*, 516 U.S. 349, 259 n.7 (1996). Conversely, a judgment creditor may not employ methods of enforcement that are not available under state law. *See Leroy v. City of Houston*, 906 F.2d 1068, 1085–86 (5th Cir. 1990).

Article XII section 10(A) of the Louisiana Constitution waives Louisiana's sovereign immunity in particular circumstances, including breach of contract. "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract . . . ." La. Const. art. 12, § 10(A) (2016). However, section 10(c) limits this liability. "No public property or public funds shall be subject to seizure. . . . No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." La.

Const. art. XII, § 10(C) (2016). Louisiana courts have interpreted these provisions to limit judgment creditors of a political subdivision of Louisiana to funds appropriated for that purpose by the political subdivision at issue. *See, e.g.*, *Vogt v. Bd. Of Comm'rs of the Orleans Levee Dist.*, 2001-0090, p. 8 (La. App. 4 Cir. 03/27/02) 814 So. 2d 648, 654; *Cooper v. Orleans Parish School Board*, 99-0050 (La. App. 08/08/99), 742 So.2d 55.

**C. Discussion**

The present case has as its genesis a breach of contract. In essence, PWS argues that the 2013 Time Contract is valid, and that a preliminary injunction should be issued in order to preserve the status quo that exists under the 2013 Time Contract. The Court examines the pertinent elements required for issuance of a preliminary injunction: (1) irreparable injury; (2) substantial likelihood of success on the merits; (3) a favorable balance of hardships (equity); and (4) no adverse effect on the public interest. *See Kenneth*, 344 Fed. App'x at 989. The Court will address these elements slightly out of order due to the atypical structure of the parties' arguments.

i. Inescapable Inference of Injunctive Relief

At the outset, the Court addresses PWS's argument that it need not show irreparable injury or the absence of a disservice to the public interest. The prongs of irreparable injury and adverse effect on the public interest are not at issue when the "statute by necessary and inescapable inference requires injunctive relief." *United States v. Fed. Deposit Ins. Corp.*, 881 F.2d 207, 210 (5th Cir. 1989) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 (1987)). By the plain language of the exception, the party moving for an injunction must prove the violation of a statute. But the statute cited by PWS as allegedly prohibitory, La. R.S.

39:1503, was repealed as of January 2015.[2] R. Doc. 21 at 10. Further, at the preliminary injunction hearing, PWS emphasized numerous times that St. Bernard's alleged breach violates guidelines published by its Department of Public Works. Guidelines are not statutes. Therefore, the jurisprudential exception identified by PWS is inapplicable.

ii. Irreparable Injury

PWS brings claims for breach of contract and abuse of rights under color of law. "A preliminary injunction is an extraordinary remedy that is issued only when a party does not have an adequate remedy at law." *Dennis*, 889 F. Supp. 2d at 815. Both of these causes of action may be compensated at law through the grant of money damages. To the extent that PWS asserts the potential for reputational harm or loss of goodwill, these injuries are also cognizable at law. "While [injury to reputation and goodwill may sometimes satisfy the irreparable injury prong], there is not a *per se* rule that such harm is always irreparable by a remedy at law." *LaFarge Corp. v. Cement Transp. Corp*, No. 95-4255, 1996 WL 7042, at *2 (E.D. La. 1996) (citing *Penthouse Intern., Ltd. v. Playboy Enters, Inc.*, 392 F. Supp. 257, 261 (S.D.N.Y. 1974)). Thus, without more, PWS cannot claim irreparable injury.

The Court finds unpersuasive PWS's argument that irreparable injury exists on the grounds that this Court lacks the authority to enforce an award of money damages against St. Bernard. Both the Fifth Circuit and Louisiana district courts have held that a federal interest in enforcement may exist where the state entity has unequivocally refused to pay a money judgment. The Fifth Circuit in *Freeman* recognized that there may be a sufficient federal interest

[2] The statutes and ordinances at issue also fail to carry the "inescapable inference" that injunctive relief is required. *FDIC*, 881 F.2d at 210. The violation of state Public Bid Law or Request for Proposal procedures does not "require" an injunction. *Id.* As discussed elsewhere in this Order & Reasons, money damages are a viable remedy for breach of contract. The Court also notes that on these facts money damages may be more in the public interest than the grant of an injunction. Evidence presented at the preliminary injunction hearing suggests that Pelican contracted to provide pickup services for approximately $2.00 cheaper per household than PWS. Disregarding the public's interest in cases such as the one at bar would greatly frustrate efforts to obtain better public services through the efficient breach of contracts.

"when a state makes abundantly clear that it will never satisfy the judgment." *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 352 F. App'x 921, 923 (5th Cir. 2009) (citing *Gates*, 616 F.2d at 1271); *see also Vogt v. Bd. Of Comm'rs of the Orleans Levee Dist.*, 294 F.3d 684, 697 (5th Cir. 2002) (noting in dicta that the failure of a governmental entity to pay a judgment could amount to a violation of the Takings Clause of the Constitution). The Western District of Louisiana has interpreted this language to provide for the enforcement of a money judgment against the City of Alexandria in part because the City "clearly intend[ed] to never satisfy the Final Judgment." *City of Alexandria v. Cleco Corp.*, No. 08-800, 2014 WL 4072073, at *8–9 (W.D. La. Aug. 15, 2014); *cf. Benson v. Reg'l Transit Auth.*, 05-2777, 2015 WL 5321685, at *3 (E.D. La. Sept. 10, 2015) (quoting *Freeman*, 352 F. App'x at 925) (declining to enforce a money judgment against the City of New Orleans where the City merely "has done no more than indicate 'that [it] does not believe it must immediately satisfy the judgment'"). Should the Parish of St. Bernard refuse to timely honor a lawfully-issued judgment of this Court, the Court may take appropriate steps to protect the federal judiciary's interest in ensuring that its judgments are not rendered toothless by recalcitrant state entities.

iii. The Balance of Hardships

The Court next balances the weight of the injury faced by PWS against the threatened harm to other parties to the litigation. PWS faces lost profits if Pelican is allowed to service St. Bernard in its stead. Additionally, PWS demonstrated at the preliminary injunction hearing that the equipment PWS uses to service St. Bernard would be greatly devalued if the contract were found null. State and local entities often place restrictions on the classes of equipment that may be used by the providers of solid waste removal services. Therefore, PWS's St. Bernard trash removal equipment may be useless for servicing other parishes, and the equipment would likely sell for a diminished price on a secondary market. These potential losses constitute a cognizable

harm. PWS also offered evidence that the company intends to terminate its St. Bernard employees if the contract with St. Bernard is found null. The interests of these employees also weigh in PWS's favor.

Turning to the other parties, intervenor Pelican demonstrated at the preliminary injunction hearing that Pelican will suffer significant harms if the present preliminary injunction is issued. Pelican faces lost profits if it is not allowed to proceed on its contract with St. Bernard. Pelican also expended over $3,000,000 purchasing equipment in preparation for fulfilling the terms of their contract with St. Bernard. R. Doc. 19 at 9. Additionally, Pelican hired new staff who will be terminated if the contract with St. Bernard is voided. At first blush, the harms threatened to PWS and Pelican appear to be roughly equal.

Only one factor distinguishes PWS and Pelican: the relative ease with which the parties can bear the cost of waiting for judgment. As explored at trial, PWS is a national waste services provider. Pelican is a recently-incorporated local waste services provider. All other things being equal, a court sitting in equity should allocate the burden of awaiting final judgment to the parties best capable of bearing the cost. A judgment finding Pelican's contract valid will have little value to Pelican if the business falters while awaiting trial. *See New Orleans Home for Incurables, Inc. v. Greenstein*, 911 F. Supp. 2d 386, 404 (E.D. La. 2012) (granting a preliminary injunction in part on the grounds that a final judgment would be meaningless if plaintiff's business were bankrupted before damages could be allocated). The balance of harms therefore tips slightly against PWS.

iv. Substantial Likelihood of Success

With respect to a substantial likelihood of success, another section of this Court's recent reflection on the state of the substantial likelihood prong is instructive,

> Courts use "a bewildering variety of formulations of the need for showing some likelihood of success." Wright & Miller, *supra*, § 2948.3. Some courts require the movant to show that the likelihood of success on the merits is greater than fifty percent. *See, e.g.*, *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). However, the Fifth Circuit recognizes that a finding of substantial likelihood does not require a finding of a fixed quantitative value. *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n. 2 (5th Cir.1979). Rather, "a sliding scale can be employed, balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits." *Id.*
>
> When the other factors weigh strongly in favor of an injunction, "a showing of some likelihood of success on the merits will justify temporary injunctive relief." *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980).

*Monumental Task Comm., Inc. v. Foxx*, No. 15-6905, 2016 WL 311822, at *5 (E.D. La. Jan. 26, 2016).

The facts before the Court indicate the following. PWS's contract may be null. Pelican's contract may be null. Either or both contracts may grant exclusive rights to residential solid waste removal. And as argued by St. Bernard at the preliminary injunction hearing, the contracts may not even be mutually exclusive. These questions of fact and law diminish PWS's argument of a substantial likelihood of success on the merits. Further, PWS's poor showings as to the other prongs of the Court's preliminary injunction analysis call for greater proof of a substantial likelihood of success. *Productos Carnic*, 612 F.2d at 686. While PWS may be entitled to a judgment in its favor, at this stage in the litigation questions of fact and law cloud PWS's claims. PWS therefore fails to meet its burden as to this prong.

In sum, PWS fails to meet its burden of proving irreparable injury, demonstrating a substantial likelihood of success, and showing that the balance of injuries weighs in its favor. The motion must be denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that PWS's Motion for Preliminary Injunction, R. Doc. 2, is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall attend a telephone status conference on Monday, June 27, 2016, at 8:30 a.m. The parties shall use the following call-in information: telephone number 877-336-1839; access code 4227405; security code 062316. The parties shall be prepared to discuss the setting of trial dates.

New Orleans, Louisiana, this 23rd day of June, 2016.

UNITED STATES DISTRICT JUDGE