UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PROGRESSIVE WASTE SOLUTIONS OF LA, INC. | CIVIL ACTION |
| V. | NO. 16-8669 C/W 16-15830 |
| ST. BERNARD PARISH GOVERNMENT | SECTION "L" (5) |

## ORDER & REASONS

Currently before the Court are Consolidated Defendants SDT, Inc. and Sidney D. Torres, IV's ("SDT Defendants") Motion to Dismiss for Failure to State a Claim (R. Docs. 101, 106) and Plaintiff Progressive Waste Solution's Motion for Summary Judgment (R. Doc. 109). After reviewing the briefs, the applicable law, and counsels' statements at oral argument, the Court now issues this Order & Reasons.

I.  BACKGROUND

These consolidated cases arise out of a contract dispute. Plaintiff Progressive Waste Solutions of LA, Inc. ("PWS") is a Delaware corporation that specializes in solid waste removal. R. 1 at 1–2. In early 2006, St. Bernard Parish Government ("St. Bernard") issued a Request for Proposals for Municipal Solid Waste Removal, Curb Side Pick Up. R. 1 at 2. SDT Waste & Debris Services, LLC, ("SDT") submitted a proposal, and on July 27, 2006, contractually agreed to provide solid waste removal services to St. Bernard. R. 1 at 2. On February 7, 2007, SDT entered into a Time Contract with St. Bernard regarding both curb side pick-up services and dumpster pick-up services. The Time Contract was set to commence on January 28, 2008, and terminate on January 27, 2014. R. 1 at 3. The Time Contract also provided SDT the option to

1

extend the agreement through July 26, 2016. R. 1 at 3.

In June of 2011, SDT was purchased by IESI LA Corporation, which included the transfer and assignment of the July 27, 2006 Agreement and the February 7, 2007 Time Contract. Despite the purported term of the Time Contract extending to at least January 27, 2014, St. Bernard told IESI that St. Bernard intended to terminate the contractual relationship. On December 5, 2011, St. Bernard sought bids for curb side pick-up services and dumpster pick up services. R. 1 at 3–4. On December 8, 2011, IESI filed a Petition for Temporary Restraining Order, Preliminary and Permanent Injunction, and Declaratory Judgment in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard. R. 1 at 4. The state court issued the preliminary injunction on December 14, 2011, and enjoined St. Bernard from requesting proposals for bids for solid waste collection. R. 1 at 4. One week later, the state court enjoined St. Bernard from entering into any new contract for the services currently being performed by IESI. R. 1 at 4.

IESI changed its name to Progressive Waste Solutions of LA, Inc. ("PWS") on January 12, 2012. In May of 2013, St. Bernard once again issued Requests for Proposals inviting vendors to submit proposals for the waste collection services provided by PWS. R. 1 at 4. In response, PWS filed a Motion for Contempt and a Second Supplemental and Amending Petition for Temporary Restraining Order, Preliminary and Permanent Injunction and Declaratory Judgment in state court on May 20, 2013. R. 1 at 4–5. The parties resolved their differences before the state court could rule. St. Bernard agreed to extend the Time Contract through December 31, 2020. PWS in turn reduced its rates from $20.00 per household per month to $15.50 per household. R. 1 at 5. Two months later, PWS and St. Bernard entered into a new Time Contract that extended PWS's provision of solid waste services until December 31, 2020.

On May 19, 2016, St. Bernard wrote to PWS stating that they intended to unilaterally

2

terminate the solid waste services contract on July 6, 2016. St. Bernard provided two reasons for the termination: (1) the St. Bernard Home Rule Charter prohibits contracts for services not covered by public bid law exceeding three years; and (2) PWS breached the contract by missing residential pickups. R. 1 at 6, 1-7. PWS filed suit in response, requesting injunctive relief and a declaratory judgment. R. 1 at 7–9. PWS also sought damages for breach of contract, detrimental reliance, and deprivation of rights under color of law. R. 1 at 9–13.

In response, St. Bernard filed five counter claims against PWS. R. 35. First, St. Bernard alleges a breach of contract claim for overbilling for the quantity of services performed from August 1, 2006 through December 31, 2012. R. 35 at 8-9. Second, St. Bernard alleges a breach of contract claim for overbilling in pricing from January 20, 2014 to December 31, 2014 and January 21, 2015 and December 31, 2015. R. 35 at 10. Third, St. Bernard alleges that "PWS breached its obligations under the contract" by failing to collect trash on certain dates and times, and allowing spillage to occur during garbage collection. R. 35 at 11. Fourth, St. Bernard sought a declaratory judgment that the first and second SDT contracts, as well as the PWS contract were awarded in violation of Louisiana's public bid law. R. 35 at 12. Finally, St. Bernard sought a declaration that the second SDT contract and PWS contract violated the St. Bernard Charter. R. 35 at 14. PWS seeks indemnification from the SDT Defendants in relation to the first counterclaim.

Pelican Waste and Debris, LLC ("Pelican"), filed a Motion for Leave to File Intervention on June 16, 2016. R. 11. The Court granted the Order, finding that Pelican had an interest in the litigation. Specifically, Pelican alleged that it was hired by St. Bernard to replace PWS as the provider of residential waste removal services in St. Bernard Parish, and that its interests will be frustrated and it will be prejudiced if PWS receives its requested relief.

The Court denied the Motion for Preliminary Injunction on Friday, June 24, 2016. On

August 9, 2016, the Court issued an Order resolving various motions for summary judgment filed by the parties. The Court found that St. Bernard's contract with PWS was invalid as it violated the terms of the St. Bernard Charter, and its contract with Pelican was invalid because it was reached without following St. Bernard Parish's procedures for public service contracts. *See* R. 97.

Then on October 25, 2016, PWS filed this consolidated case against SDT, Inc. and Sidney D. Torres, IV, ("SDT Defendants") seeking a declaratory judgment. No. 16-15830, R. 1. PWS alleges that at on June 1, 2011 Torres owned 100% of SDT Waste & Debris Services, LLC ("SDT Waste & Debris), when IESI LA Corp, now known as PWS, entered a Purchase Agreement to acquire 100% ownership of SDT. According to the terms of that Agreement, SDT and Torres agreed to "indemnify, defend, protect and hold harmless" IESI or its successors from any losses, liabilities, or claims, including costs and expenses, sustained by IESI or a successor corporation as a result of any intentional misrepresentations or omissions by SDT or Torres in the Purchase Agreement. R. 1 at 4. Plaintiffs allege this included an obligation to defend IESI in any proceeding that was instituted after June 1, 2011 if those claims arose before June 1, 2011. R. 1 at 4.

According to Plaintiffs, St. Bernard Parish has a current suit pending in this Court against PWS as a result of SDT's overbilling between August 1, 2006 and December 31, 2012. Specifically, Plaintiffs allege that a dispute between SDT and St. Bernard arose during this period regarding disposal costs, and while the SDT Defendants claim this dispute was resolved, St. Bernard Parish considered litigating these issues, and each party retained a forensic accountant to evaluate these claims. Plaintiffs aver they were not notified of this dispute in the Purchase Agreement. R. 1 at 6. Plaintiffs claim St. Bernard and SDT had another dispute regarding the appropriate number of units SDT should bill St. Bernard during this same period.

4

R. 1 at 7. Plaintiffs allege that St. Bernard reduced its payments to SDT, while SDT continued to bill St. Bernard for the same amounts. Plaintiffs aver that the parties never resolved this dispute, and it was not disclosed to PWS at the time of the purchase. R. 1 at 7.

Plaintiffs claim that each of the above disputes led to the lawsuit between PWS and St. Bernard, as St. Bernard seeks to recover payments made as a result of services SDT did, or did not, provide prior to June 1, 2011. R. 1 at 8. Further, Plaintiffs allege that Torres' threats of a lawsuit against Mr. Taffaro, St. Bernard Parish President, constitute a threat to institute a claim, as contemplated in the Purchase Agreement. R. 1 at 9. Because PWS was not notified of these potential claims and suits at the time of the sale, it now seeks a declaratory judgment that it is entitled to indemnification and defense costs for the portion of the St. Bernard counterclaim that arises from the actions of the SDT Defendants prior to June 1, 2011. R. 1 at 10. PWS submitted a demand letter to SDT reflecting such, and SDT responded that even if the claims fell within the terms of the indemnification provision, that provision expired four years after the sales date, and thus the indemnification provision no longer applies. R. 1-6. However, SDT agreed that if the St. Bernard claims are covered by Section 9.7 of the Purchase Agreement, which sets out SDT's ongoing duty to defend, than SDT would provide a defense—but not indemnification—for the relevant counterclaim. SDT explained it had retained counsel to coordinate this defense. R. 1-6 at 2.

PWS argues that the temporal limitations do not apply to the indemnification agreement, because the claims existed prior to the agreement and were intentionally not disclosed. PWS seeks a declaratory judgment from this Court as to its rights to defense and indemnification under the terms of the agreement. R. 1 at 13. Plaintiffs also seek attorney fees. R. 1 at 14.

## II. Purchase Agreement

Before reviewing the parties' arguments, the Court finds it appropriate to discuss the

5

relevant terms of the Purchase Agreement. On June 1, 2011, IESI (now known as PWS), SDT, Inc. and Sidney D. Torres, IV, entered a purchase agreement. The agreement contains a chapter outlining the indemnifications obligations SDT owed to IESI/PWS after the sale. The relevant sections of that chapter provide:

> 9.1 **Indemnification by Sellers**. Subject to section 9.2, each of the Sellers covenants and agrees to indemnify, defend, protect, and hold harmless Buyer . . . from and against and in respect of all liabilities, losses, claims, damages . . . and costs and expenses (including without limitation reasonable attorneys' fees) (collectively, "Damages") sustained, incurred, or paid by the Buyer Indemnified Parties in connection with, resulting from, or arising out of directly or indirectly; (a) any misrepresentation in, omission from, breach or claim of breach or any representation or warranty of either of the Sellers set forth in Section 2.3, and any intentional misrepresentation or omission by either of the Sellers contained in this Agreement or any other document or instrument delivered in connection with this Agreement.
>
> 9.2 **Limitation of Indemnification by Sellers**.
> (a) Notwithstanding the foregoing, (i) Sellers' aggregate liability for indemnification under this Agreement with respect to any claims under Section 9.1 shall not exceed the amount equal Ten Million and No/100 Dollars ($10,000,000) and (ii) **Buyer may not bring any claim under Section 9.1 after the fourth anniversary of the Closing Date.** (emphasis added).
>
> (b) Notwithstanding the foregoing, the provisions contained in Section 9.2(a) **shall not apply** to any claim for indemnification with respect to (i) claims made **under Section 9.1(a) . . .** or (iii) claims made under Sections 9.1(f), (g) or (h) **or Section 9.7**." (emphasis added).

Thus, read in conjunction, Sections 9.1 and 9.2 provide that the Seller has an obligation to defend and indemnify the Buyer for any claims or damages which relate to the Seller's conduct before the Purchase Agreement. This obligation ends four years after the date of the Purchase Agreement. However, if the claim arises from a misrepresentation or omission the Seller made in the Agreement, the four year time limit does not apply. Further, Section 9.7 of the agreement provides:

> (a) Sellers jointly and severally agree to defend Buyer and the other Buyer Indemnified Parties . . . against any and all claims or demands made or threatened

6

> to be made or causes of actions or proceedings instituted or threatened to be instituted against such persons in connection with any of the matters set forth on Schedule 9.7 . . . and any other claims, causes of actions or other proceedings that are either made or instituted (i) prior to the Closing Date or (ii) subsequent to the Closing Date to the extent that such claims, actions or proceedings relate to or arise out of any period of time on or before the Closing.
> (d) sellers agree to pay for any costs incurred in connection with the defense of the Existing Claims, including any fines, orders, interests, penalties, settlement amounts or other damages payable in connection therewith.

In other words, Seller [SDT] agrees to defend[1] Buyer [PWS] from claims that are made before the Closing Date, or relate to or arise out of the Seller's actions before the Closing. PWS has now filed a Complaint seeking a Declaratory Judgment that the SDT Defendants have an obligation to indemnify PWS for any liability it incurs as a result of St. Bernard's counterclaims. First, PWS argues the indemnity obligation arises from Section 9.1 of the Agreement, as the counterclaims arise from a misrepresentation or omission in the Purchase Agreement. Second, PWS contends that Section 9.7 includes both a duty to defend and indemnify.

## III. PRESENT MOTIONS

Currently pending before the Court are Defendants' Motion to Dismiss, R. 101, 106, and Plaintiff's Motion for Summary Judgment, R. 109. Each motion is opposed.

### A. Defendants' Motion to Dismiss (R. 101, 106)

Defendants have filed a Motion to Dismiss PWS's claims for declaratory judgement, arguing PWS is not entitled to indemnification under either Section 9.1 or 9.7 of the Purchase Agreement. SDT argues that the plain language of the Purchase Agreement defines the extent of its indemnification and defense obligations. R. 101 at 3. The Agreement provides that it shall be construed in accordance with Louisiana law which provides, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in

---

[1] The Parties' dispute what is included in this obligation to "defend," as discussed more fully below.

search of the parties' intent." La. Civ. Code art. 2046. According to SDT, PWS's Complaint relates to two separate portions of the purchase agreement. R. 101 at 4. First, Section 9.1 and 9.2 of the agreement, which discuss indemnification rights and obligations, and second, Section 9.7, entitled Defense of Claims. Section 9.1 requires SDT to defend and indemnify the Buyer for any claims that relate to conduct before the Purchase Agreement; however, Section 9.2 provides "(ii) Buyer may not bring any claim under Section 9.1 after the fourth anniversary of the Closing Date." R. 101 at 5. Because the closing date was June 1, 2011, SDT avers that PWS' claim for defense and indemnification under Section 9.1 is time-barred. R. 101 at 5.

Addressing PWS' argument that SDT must defend and indemnify under Section 9.7, SDT admits that Section 9.7 of the agreement provides "(d) Sellers agree to pay for any costs incurred in connection with the defense of the Existing Claims, including any fines, orders, interests, penalties, settlement amounts or other damages payable in connection therewith," but argues that this Section does not impose a duty to indemnify. R. 101 at 7. The SDT Defendants explain they have already agreed to provide for a defense, at their own cost, to the portion of St. Bernard's counterclaims which relate to conduct before the Purchase Agreement. R. 101 at 7. Therefore, they argue they have fulfilled their obligations under the agreement, and Plaintiff's Complaint seeking a Declaratory Judgment must be dismissed. R. 101 at 7.

### B. Plaintiff's Response (R. 99)

Plaintiff opposes the Motion, and argues SDT and Torres did not disclose the disputes which now form the basis of St. Bernard's counterclaims at the time of the Agreement, and therefore the counterclaims arise from a material omission from the Purchase Agreement, such that the four-year time limit for indemnification under Section 9.1 does not apply. Additionally, Plaintiff argues Section 9.7's duty to defend includes an obligation to indemnify. R. 99 at 1-2.

Plaintiff avers that the Agreement required SDT and Torres to "disclose all possible

8

claims" at the time of the Purchase Agreement, and despite the fact they had full knowledge of these potential claims, the SDT Defendants did not disclose them to PWS. R. 99 at 2. PWS explains that because SDT and Torres knew of these potential claims yet did not disclose them, they made an intentional misrepresentation or omission, and therefore the temporal limitation in Section 9.2 does not apply. Thus, the SDT Defendants have a continuing obligation to defend and indemnify under Section 9.1. R. 99 at 4.

In support of this position, PWS explains the events that transpired between Mr. Torres and Mr. Taffaro, the Parish President at the time, at a St. Bernard Parish Council Meeting in early 2011. R. 99 at 6. As a result of a heated disagreement and accusations made during the meeting, Mr. Torres and Mr. Taffaro exchanged a series of correspondence which, according to PWS, indicates SDT and Torres were aware St. Bernard had potential claims against them prior to the June 1, 2011 sale date. R. 99 at 6-8. PWS argues because SDT was aware of the potential claims at the time of the Purchase Agreement, and did not disclose them, the counterclaims arise from a misrepresentation or omission.[2]

Next, PWS argues that even if the four-year time limit does apply, the SDT Defendants still have an obligation to defend and indemnify under Section 9.7. That Section provides "Sellers agree to pay for any costs incurred in connection with the defense of the Existing Claims, **including any** fines, orders, interests, penalties, **settlement amounts or other damages payable in connection therewith**." Based on this language, PWS contends that SDT has a duty

---

[2] PWS also explains that its position is supported by the Louisiana concept of *contra non valentum.* "The doctrine of *contra non valentem agere nulla curit praescriptio* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff." *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993).

to defend and indemnify under Section 9.7. R. 99 at 8.

### C. Plaintiff's Motion for Summary Judgment (R. 109)

PWS filed a Motion for Summary Judgment arguing it is entitled to a Declaratory Judgment that SDT and Torres have an obligation under the terms of the Purchase Agreement to defend and indemnify PWS in regards to the counterclaims asserted by St. Bernard Parish. R. 109 at 1-3. PWS restates many of the arguments made in its response to SDT's Motion to Dismiss, but the Court will review them again here.

First, PWS argues that SDT and Torres represented there were no pending or threatened claims, actions, suits, proceedings, or investigations against SDT at the time of the Purchase Agreement. R. 109 at 3-4. However, PWS argues that the facts indicate SDT and Torres were in fact aware of these potential claims. R. 109 at 4. According to PWS, this demonstrates SDT and Torres made a misrepresentation or omission, which was a breach of the terms of the Purchase Agreement. R. 109 at 4. Thus, PWS avers that SDT's obligations to indemnify PWS for St. Bernard's counterclaims are governed by Section 9.2(b) of the agreement, which explains that the four year indemnification time limit does not apply to claims that arise from material misrepresentations or omissions made by Sellers. R. 109 at 4.

Second, PWS argues that Section 9.7(d) of the Agreement sets out defense obligations for claims based on conduct that occurred prior to the Agreement, and provides "Sellers agree to pay for any costs incurred in connection with the defense of the Existing Claims, **including any** fines, orders, interests, penalties, **settlement amounts or other damages payable in connection therewith**." According to PWS, this provision imposes a duty for SDT and Torres to indemnify PWS for claims based on conduct that occurred prior to the June 1, 2011 Purchase Agreement. R. 109 at 7-11. PWS contends SDT and Torres had a duty not only to defend these claims, but

10

also to indemnify PWS for any settlement or judgment they may have to pay in relation to St. Bernard's counterclaims. R. 109 at 6-7, 16.

### D. Defendant's Response (R. 114)

The SDT Defendants argue that they fully disclosed "all known pending litigation and investigations" at the time of the Purchase Agreement. R. 114 at 3. They admit SDT and St. Bernard had a dispute regarding the correct number of units SDT should be billing the parish for sanitation services. However, SDT explains this conflict was resolved and the parties entered a Resolution Agreement in January 2009, and Defendants were not aware of any pending claims St. Bernard had threatened against them at the time of the Purchase Agreement. R. 114 at 3-4.

Next, Defendants argue that the language of the Agreement unequivocally states that a temporal limitation applies to any indemnification obligations. Section 9.1 states:

> For the avoidance of doubt, there shall be no indemnification under this Agreement for any claim made after the Closing that any of the representations and warranties made by Sellers in Article 2 were not accurate as of the Closing Date, except for any claim related to either (x) an alleged breach of the representation in Section 2.3 (Ownership and Equity of the Company) or (y) an intentional misrepresentation or omission in any of the representations and warranties made by Sellers in Article 2.

SDT argues it did not intentionally misrepresent or omit any information related to the counterclaims at issue, and therefore the limited exception in section 9.1(y) does not apply. The Purchase and Sale Agreement further provides:

> Section 9.2 **Limitation of Indemnification by Sellers**.
> (a) Notwithstanding the foregoing, (i) Sellers' aggregate liability for indemnification under this Agreement with respect to any claims under Section 9.1 shall not exceed the amount equal Ten Million and No/100 Dollars ($10,000,000) and (ii) Buyer may not bring any claim under Section 9.1 after the fourth anniversary of the Closing Date.

11

Relying on this provision, Defendants aver that under the plain language of the agreement, any indemnification obligation terminates four years after the date of sale; therefore PWS is not entitled to indemnification in this case. R. 114 at 4-5.

Additionally, Defendants argue that PWS' claim for indemnity as an element of defense costs is barred. They agree that Section 9.7 of the agreement provides that Defendants shall pay defense costs for claims that arise out of conduct that occurred before the closing date but explain the indemnification provision under the defense costs obligation only applies if the Seller has not already assumed responsibility for defending the Existing Claims within a reasonable period of time. R. 114 at 5-6. Defendants argue this provision does not include an unlimited obligation to indemnify, because such an interpretation would render the remaining portions of Section 9 of the Purchase Agreement—which delineate Seller's indemnification obligations—meaningless. R. 114 at 5-6. Finally, Defendants argue these claims do not arise from pre-Purchase Agreement conduct, but stem from the 2013 contract between PWS and St. Bernard Parish, which superseded the prior agreement between SDT and St. Bernard. R. 114 at 8-9.

## IV. LAW AND ANALYSIS

### A. Principles of Louisiana Contractual Interpretation

A federal court sitting in diversity applies state substantive law, including the state's choice of law rules and method of statutory interpretation. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Keenan v. Donaldson, Lufkin & Jenrette, Inc.,* 529 F.3d 569, 572–73 (5th Cir. 2008). "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 206 (5th Cir. 2007) (internal citations omitted). "In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if

presented with the same case." *Id.* In *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, the Supreme Court of Louisiana explained the law applicable to contract interpretation:

> Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

2012-2055, p. 5-6 (La. 3/19/13); 112 So.3d 187, 192 (citations and quotations omitted).

However, if the "written expression of the common intention of the parties is ambiguous," parol or extrinsic evidence is admissible to interpret the contract. *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02); 817 So.2d 69, 75 (citing *Ortego v. State, Through the Dep't of Transp. & Dev.*, 96-1322 (La. 2/25/97); 689 So.2d 1358). "A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Id.* (citations omitted).

B.   **Discussion**

1.   **SDT Defendant's Motion to Dismiss**

a)   **Motion to Dismiss Standard**

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Generally, when evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court should not look past the pleadings.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The district court must construe facts in the light most favorable to the nonmoving party and must accept as true all factual allegations contained in the complaint. *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

b)   **Analysis**

To prevail on their Motion to Dismiss, the SDT Defendant would need to demonstrate PWS cannot prove any set of facts which would entitle them to relief. *See Conley*, 355 U.S. at 47. First, the SDT Defendants argue they do not have a duty to indemnify under Section 9.1, because these claims do not arise out of a misrepresentation or omission. SDT admits there were conflicts between SDT, Torres, and St. Bernard Parish regarding disposal rates and quantities,

but that these conflicts were completely resolved at the time of the agreement. Alternatively, PWS avers that the SDT Defendants knew these claims had not been resolved, and failed to notify PWS about the potential liability at the time of the sale. Viewing the evidence in the light most favorable to the nonmoving party, PWS's claim is plausible on its face. *See Bell Atlantic Corp.*, 550 U.S. at 570. While the evidence is far from conclusive at this stage in the proceedings, the SDT Defendants may have known about these potential claims at the time of the agreement. If they did, and failed to disclose them to PWS, the four-year time limit would not apply, and PWS would be entitled to indemnity under Section 9.1. Thus, SDT's Motion to Dismiss in regards to indemnity under Section 9.1 is **DENIED**.

However, whether Section 9.7 imposes an obligation to indemnify as well as defend will turn solely on the language of the contract. The relevant portion of Section 9.7 provides, "sellers agree to pay for any costs incurred in connection with the defense of the Existing Claims, including any fines, orders, interests, penalties, settlement amounts or other damages payable in connection therewith." The SDT Defendants aver this obligation includes fines or damages related to the *defense* of the claim, rather than the claim itself, whereas PWS contends this portion provides a separate indemnification obligation—without any temporal limitation. Even viewing the facts in the light most favorable to PWS, this interpretation is not plausible. "Even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences." *Clovelly Oil,* 112 So.3d at 192. If Section 9.7 included a continuing duty to indemnify, there would be no reason to have a separate Section addressing the Sellers indemnification obligations.

Additionally, PWS' interpretation of Section 9.7 would render much of Section 9.1 meaningless. Section 9.1 provides,

> For the avoidance of doubt, there shall be no indemnification under this Agreement for any claim made after the Closing that any of the representations and warranties made by Sellers in Article 2 were not accurate as of the Closing Date, except for any claim related to either (x) an alleged breach of the representation in Section 2.3 (Ownership and Equity of the Company) or (y) an intentional misrepresentation or omission in any of the representations and warranties made by Sellers in Article 2.

This provision is further limited by Section 9.2, which explains that "Buyer may not bring any claim under Section 9.1 after the fourth anniversary of the Closing Date." "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id*. Applying this principle, the Court finds that Section 9.7 includes a duty to defend, and to pay damages that arise from that *defense,* but does not include a separate duty to indemnify PWS for any liability they may face on the underlying claims. Therefore, the SDT Defendants' Motion is **GRANTED** as it relates to the indemnification obligations under Section 9.7 of the Purchase Agreement.

### 2. PWS's Motion for Summary Judgment

#### a) Summary Judgment Standard

Summary judgment is appropriate when the record before a court supports the conclusion that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *See id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).

"[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

### b) Analysis

According to the plain language of the contract, the Seller has an obligation to indemnify PWS for claims that arise from any intentional misrepresentation or omissions Seller, SDT and/or Torres, made in the Purchase Agreement. This obligation extends beyond the four year time limit. To determine if this time limit applies, the Court must consider whether the SDT Defendants made any "intentional misrepresentations or omissions" in the Purchase Agreement, and whether PWS's claims for indemnity arise from these alleged misrepresentations, such that the time limit is inapplicable. To prevail on its Motion for Summary Judgment, PWS must demonstrate there is no genuine issue of material fact regarding whether SDT made a misrepresentation or omission in the Purchase Agreement. *See Celotex Corp.,* 477 U.S. at 323.

The evidence demonstrates the SDT Defendants were aware of a conflict regarding alleged overbilling for the quantity of services provided in the Parish at some point prior to the Purchase Agreement. However, there is a fact question regarding whether the SDT Defendants were aware this conflict constituted a potential or threatened claim at the time of the agreement. For example, PWS explains that Mr. Torres and Mr. Taffaro, the St. Bernard Parish President in 2011, had a heated disagreement during a February, 2011, Council meeting. R. 99 at 6. During

the meeting, Mr. Taffaro accused Mr. Torres of stealing money from St. Bernard Parish. R. Doc. 99 at 6. As a result of these accusations, Mr. Torres indicated he wanted to file suit against Mr. Taffaro. R. 99 at 6. PWS avers that this dispute was never resolved, and forms the basis of the counterclaims which St. Bernard has asserted in this litigation. R. 109 at 11.

Conversely, Torres explains that these conflicts were all resolved prior to the Purchase Agreement, and therefore they do not arise out of a misrepresentation or omission in the Purchase Agreement. First, Torres explains that SDT and St. Bernard resolved their dispute regarding the cost of waste disposal at the transfer station in January, 2009. R. 114 at 6. Second, he contends St. Bernard and SDT reached an agreement regarding the number of residential billing units in September, 2010, when the Parish amended the Time Contract it had with SDT. R. 114 at 7; R. 109-4 at 15 (Mr. Taffaro's Deposition). According to Torres, after the altercation at the St. Bernard Parish Council meeting, he sent a letter to Mr. Taffaro threatening to file a defamation lawsuit. However, Mr. Taffaro issued a written apology, and Torres believe the matter was resolved. Further, he explains this conflict did not involve a potential claim by St. Bernard against SDT, but rather a potential claim by Mr. Torres against Mr. Taffaro.

Based on this evidence, whether St. Bernard's counterclaims against PWS arise from any misrepresentations or omissions the SDT Defendants made in the Purchase Agreement is a question of material fact. Therefore, at this point, the Court cannot resolve whether the four-year limitation on the Seller's duty to defend and indemnify applies to the St. Bernard counterclaims. PWS's Motion for Summary Judgment must be **DENIED** as it relates to SDT's indemnification obligations under Section 9.1.

At oral argument, counsel for PWS argued that either the claims arise from a material misrepresentation, such that the four-year time limit does not apply, or they were resolved prior to the Purchase Agreement such that St. Bernard's counterclaims must be dismissed. However,

in reaching today's decision, the Court does not hold that the conflicts between SDT and St. Bernard were resolved prior to the Purchase Agreement, but merely that a fact question precludes determining this issue on Summary Judgment. As the Court previously held, St. Bernard's counterclaim regarding overbilling for the quantity of services performed raises factual questions, which precludes summary judgment. R. 97 at 30.

Finally, PWS argues it is entitled to summary judgment on its claim that Section 9.7 of the Purchase Agreement includes a duty to indemnify in addition to its duty to defend. This ambiguity is purely a legal issue of contractual interpretation, and is thus ripe for summary judgment. Louisiana law provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. Thus, applying Louisiana law to the terms of the Purchase Agreement, Section 9.7 dictates that SDT has an obligation to defend PWS against St. Bernard's counterclaim as it relates to alleged overbilling that occurred between August 1, 2006 and June 1, 2011, and must pay any fees and damages that arise from that *defense*, but Section 9.7 does not make SDT responsible for indemnifying PWS for damages it may be required to pay as a result of the underlying claim.

As discussed above, if Section 9.7 included a duty to indemnify, it would render other portions of the Purchase Agreement meaningless. Because every provision in the Purchase Agreement "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Clovelly Oil,* 112 So.3d at 192. Thus, the Court finds that Section 9.7 does not include a separate duty to indemnify PWS for liability it may incur on the

underlying claims. Therefore, PWS's Motion for Summary Judgment is **DENIED** as it relates to the indemnification obligations under Section 9.7 of the Purchase Agreement.

V.  **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the SDT Defendants' Motions to Dismiss, R. 101 and 106, are **GRANTED** in part and **DENIED** in part. They are **GRANTED** as they relate to PWS's claim that Section 9.7 of the Purchase Agreement includes a duty to indemnify. They are **DENIED** as they relates to PWS's claims that the SDT Defendants owe indemnification because the counterclaims arise from a misrepresentation or omission in the Purchase Agreement.

**IT IS FURTHER ORDERED** that PWS's Motion for Summary Judgment, R. 109, is **DENIED**.

**IT IS FURTHER ORDERED** the parties contact the case manager, Dean Oser, to set up a scheduling conference with the Court.

New Orleans, Louisiana, this 11th day of April, 2017.

_____
UNITED STATES DISTRICT JUDGE